IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JOSEPH A. COURTRIGHT,                    )
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )      Case No. CIV-08-230-D
                                         )
THE BOARD OF COUNTY COMMISSIONERS        )
OF PAYNE COUNTY, OKLAHOMA; *et al.*,     )
                                         )
            Defendants.                  )

## ORDER

Before the Court is Defendants' Motion for Summary Judgment [Doc. No. 85], filed pursuant to Fed. R. Civ. P. 56 regarding all claims asserted by Plaintiff Joseph A. Courtright and a claim asserted by a potential opt-in plaintiff, Catherine Emarthla, who has consented to join a class action (discussed below). Plaintiff has filed a response on behalf of himself and Ms. Emarthla opposing the Motion, which is fully briefed and at issue.

Plaintiff brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and Oklahoma law, to recover damages allegedly caused by overtime wage violations of his former employer, the Payne County Sheriff's Department, and the retaliatory termination of his employment.[1] Plaintiff alleges he formerly worked as a jailer, and during his employment, he and other similarly situated employees of the sheriff's department were required to attend training programs without monetary compensation in violation of Oklahoma wage laws and, as a result of attending these programs, "worked in excess of the maximum hours provided under the FLSA." *See*

---

[1] The state law claims arise under "Oklahoma's wage laws, Okla. Stat. tit. 40 § 165.1 *et seq.*, and Okla. Adm. Code 380:30-1-7(a), and Oklahoma's public policy against wrongful termination." *See* Am. Compl. [Doc. No. 23], ¶ 3.

Am. Compl. [Doc. No. 23], ¶ 9. Plaintiff also alleges he and other similarly situated employees were required "to work hours in excess of the maximum hours set forth in the FLSA on occasions other than those in which they had to attend training programs." *Id.* ¶ 11. Further, Plaintiff alleges "it was standard practice and procedure for Payne County and its Sheriff's Department to willfully fail to provide [the employees] with any compensation, whether overtime compensation or compensatory time off, for the hours worked in excess of the maximum." *Id.* ¶ 12. The Amended Complaint asserts that Plaintiff was terminated on October 3, 2007, for opposing unlawful wage practices and that his termination "was in retaliation for reporting the FLSA violations and Oklahoma wage law violations." *See id.* ¶¶ 14-15. Finally, the Amended Complaint states that on October 8, 2007, "Payne County and its Sheriff's Department changed its overtime policies and practices to provide compensation." *See id.* ¶ 17.

The FLSA authorizes collective or class actions by similarly situated employees to recover unpaid wages if the employees consent in writing to become party plaintiffs. *See* 29 U.S.C. § 216(b). Pursuant to this provision, and the procedure approved in *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001), the Court conditionally certified a class of "jailers and dispatchers who are currently employed or were employed by the Payne County Sheriff's Department and who are or were required to attend training programs and/or work overtime without appropriate compensation." *See* Order 4/21/09 [Doc. No. 49] at 3. Within the time period set by the Court, only three putative class members filed their written "Opt-In Consent" forms.[2] *See* Notices [Doc. Nos. 55-57]. Two of the three opt-in plaintiffs subsequently abandoned

_____

[2] Two other persons filed untimely consent forms, which were stricken. *See* Order 9/4/09 [Doc. No. 65] at 3. One of them subsequently filed a separate action, *Ness v. Board of County Comm'rs*, Case No. 09-1353-D, which was consolidated with this case for discovery only. The Court granted summary judgment to the defendants in *Ness*, as discussed further below.

the litigation, and the Court entered an order barring them from future participation and striking their consent forms. *See* Order 10/8/10 [Doc. No. 82]. Accordingly, Plaintiff Courtright and Ms. Emarthla are the only parties whose claims remain for adjudication, even if the case proceeds as a class action.

Perhaps as a result of this development, Defendants Board of County Commissioners of Payne County, Oklahoma, and Payne County Sheriff, did not file a timely motion for decertification of the class, as provided by *Thiessen* and the case schedule. Therefore, this case will proceed as a class action, but the only class members are Plaintiff Courtright and Ms. Emarthla. These persons will be referred to collectively, where appropriate, as Plaintiffs. When discussing their individual circumstances or claims, they will be referred to respectively as Courtright and Emarthla.

## Defendants' Motion for Summary Judgment

Defendants seek a judgment as a matter of law under Rule 56 on all claims asserted by Plaintiffs. Defendants contend the sheriff's department utilized an overtime wage system authorized by the FLSA for law enforcement employees, including jailers, under which employees were entitled to overtime compensation only for hours worked in excess of 171 hours in a 28-day period. *See* 29 U.S.C. § 207(k). Defendants assert that the sheriff's pay practices were in full compliance with this system and Plaintiffs cannot establish that either of them worked more than 171 hours in a 28-day work period during the relevant time frame, that is, within the two-year statute of limitations generally applicable to FLSA claims. *See* 29 U.S.C. § 255(a). For Emarthla, who resigned from the sheriff's department on July 18, 2007, and did not file her opt-in consent form until July 1, 2009, Defendants contend the relevant time period is about 17 days, from July 1, 2007, to July 18, 2007. Further, to the extent any overtime compensation was due, Defendants present evidence to show that the sheriff's department had an overtime compensation system authorized by the FLSA that

provided employees with compensatory time off in lieu of monetary payment. *See* 29 U.S.C. § 207(o).

Plaintiffs respond to these arguments by relying on county records indicating that Plaintiffs regularly worked 173 hours per month, and on their own deposition testimony stating they worked additional hours beyond those reflected on written schedules. Plaintiffs also contend Defendants have failed to establish that Plaintiffs agreed to accept compensatory time off in lieu of payment, as required by § 207(o)(2). Finally, Plaintiffs dispute Defendants' position regarding the relevant time period, based on a contention that a three-year limitations period for "willful" violations applies.

As to Courtright's FLSA retaliatory discharge claim, Defendants assert that Courtright cannot establish a *prima facie* case of retaliation under the applicable burden-shifting method of proof. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) analysis applies to FLSA retaliation claims). Specifically, Defendants contend Sheriff Noel Bagwell terminated Courtright's employment based on performance issues, without being informed of any verbal complaint that Courtright may have made to his supervisor about a lack of overtime compensation. Defendants further present facts to show that Sheriff Bagwell had legitimate, non-retaliatory reasons for terminating Courtright's employment. In response, Courtright argues simply that a causal connection between his complaint and his termination may be inferred from the timing of events.

Defendants also assert that Courtright cannot establish an Oklahoma wage law violation or a wrongful discharge claim under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989). Courtright responds simply that Defendants' pay practices and his termination violated state as well as federal law.

## Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *See id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(c)(2). A party asserting that a fact either cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record," such as depositions, affidavits, discovery responses, or documents. *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Adler*, 144 F.3d at 671. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see Adler*, 144 F.3d at 672. The proper inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts

The relevant facts are substantially undisputed. Plaintiffs are former employees of the Payne County Sheriff's Department, who worked as jailers during the time period relevant to this action. From 2004 until July, 2007, Sheriff Bagwell served as an undersheriff to his predecessor, Sheriff Carl Hiner, and then served as sheriff from July, 2007, to December 31, 2008. During his tenure, Sheriff Bagwell had the sole authority to hire and fire jailers and other employees of the department. At all relevant times, the pertinent employee policies of the department were contained in a written handbook, entitled "Payne County Personnel Policy," as revised in August, 2005. Plaintiffs both acknowledged in writing in September, 2005, that they had received a copy of the handbook and that it was their responsibility to be familiar with its contents.

At all relevant times, employees of the sheriff's department were paid on a monthly basis at the end of the month. However, law enforcement employees, including jailers, were scheduled on a 28-day cycle, with a work period beginning at midnight on a Sunday, continuing for 28 days, and ending at midnight on a Sunday four weeks later. The overtime policy of the department was set out in the Payne County Personnel Policy, which stated that non-exempt law enforcement employees, including jailers, would be paid for hours worked in excess of 171 hours in the 28-day work period and the method of compensation would be that "employees are required to utilize compensatory time off in lieu of cash overtime payments." *See* Pl.'s Resp. Br., Ex. 7 [Doc. No. 88-7] at 4. This written policy conformed to the overtime provisions of the FLSA, 29 U.S.C. § 207(k). After taking office, Sheriff Bagwell requested an amendment of the department's budget to provide

funding for overtime pay; he did so by submitting an estimate of needs to the Payne County Budget Board in September, 2007. His request was approved at the board's meeting on October 8, 2007, and he then authorized employees to collect monetary overtime payments.

Courtright first worked as a jailer in 1997; he was terminated after approximately eight months for missing a scheduled work day. Sheriff Hiner re-hired Courtright as a jailer on April 1, 2005, and Courtright continued in that position after Sheriff Bagwell took office. Sheriff Bagwell terminated Courtright's employment on October 3, 2007, because he concluded that Courtright was not the type of employee he wanted to keep. This conclusion was based on a variety of infractions, but the final decision-resulting infraction was Courtright's failure to attend a mandatory training session on October 2, 2007.

The job duties of the position of jailer included receiving and discharging jail inmates and providing care for inmates detained in the jail facility. Jailers were required to attend a jailer school that lasted 20-24 hours on a yearly basis. If possible, the training time counted as the employee's work shift, but if that was not possible, the training time could be counted as overtime hours for which the employee could claim compensatory time.

When asked during his deposition how many training sessions he was required to attend from 2005 to 2007, Courtright estimated the number to be "[a]bout ten." *See* Courtright Dep. 49:15-20. He recalled the type of training was jail school and Live Scan training, which lasted approximately a half-day.[3] Courtright attended jailer school in July, 2006, and his work schedule was adjusted so that the training occurred during scheduled work hours. Courtright attended Live Scan certification

---

[3] Courtright also listed a defensive tactics or custody and control course as part of his training, but he later admitted that this course was the training he failed to attend on October 2, 2007.

training in September, 2005, which Defendants contend is a date outside the time period relevant to his FLSA action. Courtright testified that he does not recall, but it is possible this training also occurred during scheduled work hours. Courtright testified during his deposition that there was annual Live Scan re-certification training, which he believes he attended in 2006. Department records do not reflect Courtright's attendance in 2006; they show he was scheduled for Live Scan training in May, 2007, as part of his work schedule, but he did not attend this training.

Sheriff Bagwell also sometimes held staff meetings that could result in additional work time for employees who were not scheduled to work during the meeting time. Courtright testified during his deposition that he could not recall a specific instance when he was required to attend a meeting outside of his scheduled work hours. Department records reflect one mandatory jailer meeting during the relevant time period, which was a one-hour meeting on August 17, 2006. Documents showing Courtright's work hours during a 28-day period from July 31, 2006, to August 27, 2006, reflect that Courtright did not have a scheduled shift on August 17, 2006, but was credited with one hour of "other" time on that date, and his total work time during the 28-day period, including the one-hour meeting, was 161 hours. *See* Defs.' Mot. Summ. J., Ex. 10 [Doc. No. 85-10] at 7.

Courtright also testified that he sometimes was required to work additional hours beyond his scheduled shifts. Although he could not identify specific instances, Courtright estimated he worked an average of five unscheduled hours during each 28-day period. To establish that unscheduled work resulted in his working more than 171 hours in a 28-day period, Courtright relies on a record of the Payne County Clerk, entitled "Employee History," which reports the total number of hours worked by a particular employee on a monthly basis, presumably for each pay period. The documents regarding both Courtright and Emarthla reflect compensation for 173 hours each month

they were employed by the sheriff's department, except during the months their employment ended. For example, these documents reflect 173 hours for Plaintiffs during a period between July 26, 2006, and August 28, 2006, which spans 32 days; they also reflect 173 hours for Courtright during a period between August 28, 2007, and September 25, 2007, which spans 28 days.

Regarding Courtright's overtime claim, Defendants provide work summaries and supporting documents (work schedules and leave slips) for each 28-day work period during the relevant time frame, according to their position regarding the statute of limitations. These summaries show that Courtright's scheduled work time generally totaled 160 hours and never exceeded 161 hours. Concerning the county clerk's records on which Plaintiffs rely, Defendants provide the affidavit of the Payne County Clerk, Linda Hatfield, to explain that "Employee History" records reflect payments of wages and benefits on a monthly basis and "reflect a standard number of hours submitted to the Oklahoma Public Employees Retirement System for each of Payne County's employees as reflective of their average number of hours worked in a one month period." *See* Hatfield Aff. [Doc. No. 89-3], ¶ 6. She states that these records do "not contain any information regarding the actual hours worked nor hours scheduled in a 28 day period by the employee identified" in each "Employee History." *See id.* ¶ 5.

Courtright testified during his deposition that he did not request compensatory time off for overtime hours but it is "possible" he would have been granted compensatory time if he had asked. *See* Courtright Dep. 60:23-61:10; 111:18-23. Courtright testified that he understood the sheriff's department had a policy of compensating employees for overtime work with "comp time" rather than monetary payment, but inconsistent with this testimony, Courtright testified he was not aware he could request comp time and "never knew it was there." *See id.* 61:3-14; 112:7-18. Courtright

admitted that he never complained about unpaid overtime to Sheriff Bagwell or the undersheriff. The only complaint to which Courtright testified was a statement to a supervisor, Brandon Myers, that Courtright would not attend his assigned training session on October 2, 2007, because he was scheduled to be off work that day and he would not be paid for attending. This statement was Courtright's first comment to anyone in administration about his overtime compensation complaint, and it was the only such comment before his termination. After he was terminated, Courtright called the undersheriff and inquired for the first time whether he would have been compensated for attending the October 2 training.

Emarthla began working for the sheriff's department in 2000 and was assigned to the position of jailer in 2002. She resigned her position on July 18, 2007.[4] In this case, she asserts only an FLSA claim alleging nonpayment for overtime hours that she accrued through either unscheduled work time or training programs. Although she could not identify specific instances, Emarthla testified that she sometimes had to work a double shift or stay beyond her scheduled shift until a replacement arrived. She estimated that double shifts occurred once every two months and instances in which she was required to stay past her shift resulted in a few additional work hours twice a month.[5] Emarthla admitted during her deposition that if she worked extra hours or a double shift, she was entitled to extra time off, and she testified that she made some requests for extra days off that were granted and some that were denied due to staffing shortages. Similarly, without

---

[4] Defendants' records reflect that Emarthla's last day of work was July 17, 2007. *See* Defs.' Mot. Summ. J., Ex. 20.

[5] She also testified that she often stayed an extra one or two hours at the end of her work shift and that this occurred approximately four out of every five shifts, but it was unclear whether this testimony referred to work time required by her employer.

identifying specific training sessions, Emarthla testified she was not paid for all training time during her employment. She estimated that she attended 20 to 30 hours of training each year, but some of these hours occurred during scheduled work shifts. She did not attend any training in July, 2007.

Like with respect to Courtright, Defendants provide work summaries and supporting documents regarding Emarthla for two 28-day work periods in June and July, 2007, that they contend are relevant to her claim, according to their position regarding the statute of limitations. These summaries show a total of 160 hours of scheduled time for Emarthla during the first period (152 hours worked and 8 hours of sick leave) and 96 hours of scheduled time during the second period (32 hours worked and 64 hours of vacation).

Courtright filed this action on March 4, 2008. The Court approved a form of written notice to potential class members about the lawsuit on June 5, 2009. The notice informed class members that they must complete and return an opt-in consent form by June 30, 2009, in order to join the action. Emarthla's written consent, which is dated June 29, 2009, was filed in the case record on July 1, 2009.

## Discussion

### A.    Relevant Time Period Applicable to Plaintiffs' FLSA Claims

Defendants contend Plaintiffs' claims are governed by FLSA's general two-year statute of limitations because Plaintiffs cannot establish any violation was "willful" as defined by the statute and case law. Although Plaintiffs object to this contention, they do not identify sufficient facts or evidentiary materials to support their objection.

"The FLSA generally imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies." *Mumby v. Pure*

*Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011); *see* 29 U.S.C. § 255(a). To proceed under the three-year statute, a plaintiff bears the burden to prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also Mumby*, 636 F.3d at 1270. The Supreme Court has endorsed a narrow definition of "willful" that is "synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional,'" and does not encompass conduct that is "merely negligent." *McLaughlin*, 486 U.S. at 133. Thus, an imperfect overtime plan or an "incorrect assumption that a pay plan complied with the FLSA" does not rise to the level of willfulness. *See id.* at 135. A plaintiff can establish reckless disregard by proving "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Mumby*, 636 F.3d at 1270 (internal quotation omitted). "The court's operative inquiry focuses on the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law." *Id.*

In this case, Plaintiffs' only attempt to demonstrate a "willful" FLSA violation appears in argument in their brief stating that Sheriff Bagwell testified "Defendants did not have a system in place for tracking compensatory time off" before he authorized monetary payment for overtime in October, 2007. *See* Pl.'s Resp. Br. [Doc. No. 88] at 8 (citing Bagwell Dep. 26:22-27:6). This statement is inaccurate. Sheriff Bagwell actually testified that, before the change in overtime compensation, the department used an informal system adopted by his predecessor, Sheriff Hiner, under which Sheriff Hiner or supervisors kept mental track of employees' overtime hours and allowed employees to take compensatory time off, with prior approval, if the employee had accrued overtime. *See* Bagwell Dep. 26:13-27:6, 57:1-9, 67:1-23. After taking office, Sheriff Bagwell

obtained funding to allow monetary payment for overtime compensation because he "didn't want to keep up with all the compensatory time" and he believed that he "could do a better job of doing it" with a monetary system and "it would be easier on staff preparing the payroll, just staff in general." *See* Bagwell Dep. 32:7-33:11.

Here, as in the related case of *Ness v. Board of County Commissioners*, the Court finds that Plaintiffs have not identified any facts or evidence to suggest that Sheriff Hiner or Sheriff Bagwell knew or acted with reckless disregard for whether the department's overtime system violated the FLSA. *See Ness v. Board of County Comm'rs*, Case No. 09-1353-D, Order (W.D. Okla. April 19, 2011) (finding another jailer's FLSA claim was barred by the two-year statute, and granting summary judgment to Defendants). Viewed most favorably to Plaintiffs, the facts shown by the summary judgment record might support a finding that the sheriff's department negligently formulated or implemented its overtime compensation plan. However, Plaintiffs have not presented sufficient facts, supported in the manner required by Rule 56, from which any "willful" violation of the FLSA could reasonably be found. Therefore, the Court finds that Plaintiffs have failed to demonstrate a genuine dispute of material fact as to whether the three-year statute of limitations should apply.

For this reason, the Court finds as a matter of law that Plaintiffs' FLSA action to recover overtime compensation is subject to the two-year statute of limitations. Accordingly, the relevant time period applicable to Courtright's overtime claim began two years before he filed suit, or March 4, 2006. As an opt-in plaintiff in an FLSA collective action, the relevant time period applicable to Emarthla's overtime claim began two years before her consent to become a party was

filed in the case record, or July 1, 2007.[6]  Therefore, only the time periods beginning on these dates and ending on the dates Plaintiffs last worked for Defendants will be considered in the discussion of Plaintiffs' FLSA claims for unpaid overtime wages.

**B.      Plaintiffs' FLSA Overtime Wage Claims**

The parties agree that Defendants utilized an overtime system for law enforcement personnel expressly authorized by the FLSA, under which employees were entitled to overtime compensation only when they worked in excess of 171 hours in a consecutive 28-day work period.  Plaintiffs do not dispute Defendants' evidence regarding the 28-day work schedules used by the sheriff's department, which show that Plaintiffs were regularly scheduled for 160 hours in each 28-day period.  Rather Plaintiffs' overtime claims depend on proof they accrued additional, unscheduled hours doing work activities, such as attending training or meetings and doing extra shift work, that caused their total work time to exceed 171 hours within a single 28-day period.  Further, Plaintiffs' overtime claims depend on proof they did not receive compensation for any overtime hours they accrued.

---

[6]  For limitations purposes, a collective action under § 216(b) is "commenced in the case of an individual claimant –

   (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

   (b) if such written consent was not so filed or if his name did not so appear – on the subsequent date on which **such written consent is filed in the court in which the action was commenced**."

*See* 29 U.S.C. § 256 (emphasis added).  Thus, an FLSA claimant's remedy in a collective action is limited by the date on which the claimant's written consent to become a party plaintiff was filed of record.

Both Plaintiffs rely on the county clerk's records reporting 173 hours per month in their "Employee History" reports to suggest that Plaintiffs regularly worked more than 171 hours within 28 days. Plaintiffs do not provide any facts or evidence – other than unexplained copies of the "Employee History" documents – to permit such an inference. In contrast, Defendants present the county clerk's affidavit stating the purpose of these documents and negating any inference that they constitute proof of the number of hours actually worked by Plaintiffs in a 28-day work period. Under the circumstances, the Court finds that the clerk's records have no relevance to the question of whether Plaintiffs accrued any overtime hours.

Both Plaintiffs also attempt to challenge the validity of Defendants' overtime compensation system, arguing the FLSA authorizes payment with compensatory time off for certain public employees only pursuant to "an agreement or understanding arrived at between the employer and employee before the performance of the work." *See* 29 U.S.C. § 207(o)(2)(A)(ii). Implementing regulations describe how this agreement may be reached with individual employees:

> An agreement or understanding may be evidenced by a notice to the employee that compensatory time off will be given in lieu of overtime pay. In such a case, an agreement or understanding would be presumed to exist for purposes of section 7(o) with respect to any employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay. However, the employee's decision to accept compensatory time off in lieu of cash overtime payments must be made freely and without coercion or pressure.

29 C.F.R. § 553.23(c)(1). Plaintiffs contend Defendants have not shown the existence of such an agreement or understanding by simply producing Plaintiffs' written acknowledgments that they received copies of the Payne County Personnel Policy in September, 2005, containing notice of the overtime compensation policy.

According to the Supreme Court, the agreement or understanding required by § 207(o), and further defined by the regulation, "need not be formally reached and memorialized in writing, but instead can be arrived at informally, such as when an employee works overtime knowing that the employer rewards overtime with compensatory time." *See Christensen v. Harris County*, 529 U.S. 576, 579 n.1 (2000) (citing 29 C.F.R. § 553.23(c)(1)).[7] In this case, Plaintiffs' contention that no agreement or understanding has been shown is factually unsupported with respect to Emarthla, who admitted in her testimony that she knew of the compensatory time policy and utilized it to request days off during her employment. Despite Courtright's equivocation in his testimony about his knowledge of the policy, the record shows that he signed an express agreement concerning it when he first began work for Sheriff Hiner as a jailer in 1997, and he testified that he had no reason to believe the policy had changed when Sheriff Hiner rehired him in that position in 2005. *See* Pl.'s Resp. Br., Ex. 8 [Doc. No. 88-8]; Courtright Dep. 42:17-43:3. Further, the Payne County Personnel Policy provided written notice to employees of the sheriff's department that only compensatory time off was available as compensation for overtime work, unless the sheriff decided to make cash overtime payments. Courtright clearly knew that cash overtime payments were not authorized.

Therefore, under the undisputed facts shown by the summary judgment record, the Court finds that the FLSA authorized the sheriff's department to compensate employees for overtime

---

[7] Relying on this principle, other district courts have held that the existence of a written municipal policy to provide compensatory time off for overtime work, together with a lack of evidence that the plaintiffs objected to this policy during their employment, is sufficient to establish an informal understanding or agreement. *See Baker v. Stone County*, 41 F. Supp. 2d 965, 992 (W.D. Mo. 1999); *Smith v. Upton County*, 859 F. Supp 1504, 1509 (M.D. Ga. 1994), *aff'd*, 56 F.3d 1392 (11th Cir. 1995); *see also Adderly v. City of Atlanta*, No. 1:08-CV-2111-TWT, 2010 WL 2662719 (N.D. Ga. June 30, 2010).

worked with compensatory time off instead of monetary payments, provided the department complied with other statutory provisions regarding overtime compensation.

### 1.    Courtright

To prevail on his claim that he is entitled to damages for unpaid overtime compensation, Courtright need only prove "that he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see also Donovan v. Simmons Petrol. Corp.*, 725 F.2d 83, 85 (10th Cir. 1983).  In this case, uncompensated overtime work would entail proof that Courtright worked more than 171 hours in a 28-day work period between March 4, 2006, and October 3, 2007.

Upon consideration of the summary judgment record, the Court finds that Courtright has not identified sufficient facts or evidence to support his claim, even when he is given the benefit of all reasonable inferences.  Aside from the county clerk's records, discussed above, Courtright relies solely on his own testimony.  He testified that he worked, on average, five unscheduled hours in a 28-day period; he did not state that unscheduled work ever exceeded 10 hours in a single period.[8] Courtright also testified that he may have attended training or meetings outside of a scheduled shift, but he could not identify a particular training or meeting.  No uncompensated training hours within the relevant time period are reflected in Courtright's training records maintained by the department, and only a single one-hour staff meeting during non-shift time was shown.  Accordingly, on the summary judgment record presented, the Court finds that Couright has failed to demonstrate facts

---

[8]  The greatest number of work hours for Courtright during any 28-day period shown by the department's records is 161 hours.

on which a finding of accrued overtime hours could reasonably be based. Therefore, Defendants are entitled to summary judgment on Courtright's FLSA overtime wage claim.

### 2. Emarthla

Similarly, Emarthla must show that she accrued uncompensated overtime hours within the limitations period applicable to her claim, that is, July 1-18, 2007. Emarthla relies on deposition testimony that fails to support any contention she worked more than 171 hours within either of the two 28-day work periods encompassing this 18-day limitations period.[9] It is undisputed that she attended no training or other work activity during this time. As to unscheduled shift work, Emarthla testified only that she generally worked a double shift every two months and was required to stay past a scheduled shift for a few additional hours twice a month. She identifies no fact or evidence suggesting that these unscheduled work hours caused her to accrue overtime within the relevant time period. Accordingly, the Court finds that Emarthla has failed to demonstrate any facts that would support a reasonable finding that she worked overtime hours during the limitations period. Therefore, Defendants are entitled to summary judgment on Emarthla's FLSA overtime wage claim.

### C. Courtright's FLSA Retaliatory Discharge Claim

Under the familiar burden-shifting analysis applicable to retaliation claims under 29 U.S.C. § 215(a)(3), a plaintiff must first establish a *prima facie* case by showing:

> (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action.

---

[9] Because Plaintiffs contend that a longer limitations period is applicable, they do not present any argument regarding Emarthla's claim directed specifically at July, 2007.

*Conner v. Schnuck Markets, Inc*., 121 F.3d 1390, 1394 (10th Cir. 1997); *see also Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). If a *prima facie* case is established, "the burden of production shifts to the employer to offer a legitimate non-retaliatory reason for the adverse employment action." *Pacheco*, 365 F.3d at 1206. Once the employer produces evidence that would dispel the inference of retaliation, "the burden shifts back to the employee to show genuine issues of material fact exist regarding whether the employer's proffered reason is unworthy of credence." *Id*. at 1207.

In this case, Courtright cites as evidence of protected activity, a statement to a supervisor that he would not attend training on his day off because he would not be paid for it. As legal authority, he cites Tenth Circuit cases interpreting § 215(a)(3) broadly and holding that an "unofficial assertion of rights through complaints at work," such as an employee's request of overtime wages, constitutes protected activity. *See Conner*, 121 F.3d at 1394 (internal quotation omitted); *see also Pacheco*, 365 F.3d at 1206. However, a recent Supreme Court decision places the validity of these holdings in question. In *Kasten v. Saint-Gobain Performance Plastics Corp*., 131 S. Ct. 1325 (2011), the Court held that § 215(a)(3) protects an oral complaint of an FSLA violation so long as the complaint provides fair notice to the employer that the employee is asserting a statutory right. *Kasten* provides the following standard for protected activity based on an employee's complaint at work:

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.

*Id.* at 1335. Applying this standard to the facts of this case, the Court finds Courtright's statement that he did not want to attend a training session on his day off without pay is insufficient to be

understood by a reasonable employer as making an overtime wage complaint or otherwise asserting FLSA rights.

Assuming, however, that Courtright's statement might be viewed as protected activity, the Court finds that Courtright has otherwise failed to demonstrate a *prima facie* case of retaliation. Although his statement was followed by adverse employment action, no inference of a causal connection arises because it is undisputed that Sheriff Bagwell did not know of Courtright's statement when he made the termination decision. *See* Bagwell Dep. 58:23-59:17. Further, because Defendants have produced evidence that Sheriff Bagwell had legitimate, nonretaliatory reasons for terminating Courtright's employment, Courtright would need to go beyond a *prima facie* case and show that these reasons were unworthy of credence. Courtright has failed to present any facts to refute Sheriff Bagwell's nonretaliatory reasons for terminating his employment.

For these reasons, the Court finds that Courtright has failed to demonstrate a genuine dispute of material facts regarding his FLSA retaliation claim. Therefore, Defendants are entitled to summary judgment on this claim.

### D.      Courtright's State Law Claims

Like his FLSA claims, Courtright has not presented sufficient facts to establish a state law claim. As to his wage claim, Courtright accepts Defendants' position that the Oklahoma Protection of Labor Act and the Oklahoma Administrative Code do not establish guidelines, rules, or standards regarding maximum hours or overtime and that FLSA standards govern any Oklahoma wage claim. *See* Pl.'s Resp. Br. [Doc. No. 88] at 8 (citing *McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1487 (10th Cir. 1996)). Accordingly, because Courtright has not demonstrated a genuine dispute of material

fact regarding his FLSA claim, he also has not made such a showing with regard to his state overtime wage claim.

Similarly, Courtright's only argument with respect to his wrongful discharge claim under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), is that "he was, in a sense, blowing the whistle when he raised his concerns with his supervisor, Brandon Myers, that employees were not being compensated for working overtime. The FLSA protects [his] right to express such concerns . . . ." *See* Pl.'s Resp. Br. [Doc. No. 88] at 11. However, the Oklahoma Supreme Court has clearly held:

> A federal statute, standing alone, does not articulate Oklahoma's public policy. Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy. [A plaintiff's] expectation that a basis for the *Burk* public-policy exception to the at-will employment rule may be supplied solely by a federal statute must be rejected.

*Darrow v. Integris Health, Inc.*, 176 P.3d 1204, 1212 (Okla. 2008) (emphasis omitted). Accordingly, Courtright's state-law wrongful discharge claim, based solely on an FLSA policy, fails as a matter of Oklahoma law. Therefore, the Court finds that Defendants are entitled to summary judgment on Courtright's state law claims, as well as his FLSA claims.

## Conclusion

For the above reasons, the Court finds that Defendants are entitled to summary judgment under Rule 56 on all claims asserted by Courtright in the Amended Complaint, as well as the FLSA overtime wage claim asserted by Emarthla.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 85] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 3rd day of June, 2011.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE